## THE PEOPLE, *ex rel.* Engs, *vs.* THE BOARD OF EDUCATION OF THE CITY OF NEW-YORK.

No one can be chosen to the office of school commissioner of the city of New-York who is not at the time a resident of the ward for which he is chosen. *Per* BEARDSLEY, J.

A removal by such commissioner from the ward for which he was chosen vacates his office.

AN alternative mandamus had been served on the defendants commanding them to allow the relator, one of the school commissioners of the city of New-York, to act as a member of the board of education, and to participate in their proceedings, or to shew cause, &c.

The defendants now filed a return, alleging that the relator had vacated his seat as a member of the board, by removing from the 14th ward of the city, for which ward it is admitted he was chosen a school commissioner, at the election in June, 1844. It states that he was a resident of that ward when he was so chosen, but that on the 1st day of May, 1845, he removed therefrom, and that on the ground of such removal the board excluded him from membership, and refused to permit him to act with them, in June, 1845.

The relator demurred, orally, to the return. Joinder.

*Dillon,* for the relator, referred to the act under which the school system in the city of New-York was organized, (*Laws* 1842, *p.* 184,) and to the subsequent act of 1844, (*Session Laws, p.* 490,) modifying these provisions. Section forty-eight of the last mentioned act is the only provision made for vacancies. It declares that certain acts and omissions shall create a vacancy, but does not specify *removal* as one of them. The section referred to, being the system in respect to vacancies which the legislature has seen fit to provide, it is not in the power of the board or the courts to add to the causes which shall operate as a disqualification and create a vacancy. The provisions of the

revised statutes are not applicable. If the removal of the relator vacated the office, it must remain vacant, for there is no method provided for filling it. The provision made for supplying vacancies in town offices cannot be made applicable to the city of New-York. (1 *R. S.* 347, § 31 *and seq.*) But if the provisions of former laws would otherwise be applicable, the section cited from the act of 1844 covers the whole subject of vacancies, and impliedly repeals all such prior provisions. (8 *Mass. R.* 326; 12 *id.* 545; 9 *Wend.* 308; 1 *Pick.* 43; *id.* 154; 9 *id.* 97

*Mason*, for the defendants. The act of 1844 on the subject of common schools in New-York does not repeal the act of 1842, except so far as the former is inconsistent with the latter. Section three of the last mentioned act declares that each ward shall be considered as a town, for all the purposes of the act, and the subsequent section in terms render certain provisions of the revised statutes applicable to the city of New-York. The general object of the act of 1842, is to extend the school system prevailing in other parts of the state to the city of New-York. But it contains in itself no provisions respecting vacancies, and yet it must have been foreseen that deaths and other causes creating vacancies would occur, and this raises a strong inference that other provisions of law defining what should constitute vacancies were considered applicable, though there was an omission to provide for supplying such vacancies. The forty-eighth section of the act of 1844 only provides for the supplying of *certain* vacancies by the common council, leaving those not mentioned as they stood upon the existing laws, and consequently without any provision for their supply.

These *ward* commissioners occupy the same relation to the school system which town commissioners do, and the same legal incidents apply to them so far as the circumstances will admit. The counsel then referred to various provisions of the revised statutes, and the acts amending the same, which are also cited in the opinion of the court, to shew that the office of school commissioner in the town is vacated by removal from the town.

*By the Court,* BEARDSLEY, J.   No person is eligible to a town office but an elector of the town for which he is chosen. (1 *R. S.* 345, § 11.)   And no one can be an elector who is not at the same time a resident of the town.   (*Id.* 339, § 1 ; *id.* 126, § 1.)   Town offices are local, and if the incumbent of such an office ceases to be an inhabitant of the town, his office is thereby vacated.   (*Id.* 122, § 34.)   If a vacancy occurs in the office of supervisor, assessor, commissioner of highways or overseer of the poor, it is to be filled by the electors of the town at a special meeting called for that purpose.   (*Id.* 348, § 34.)   But vacancies in all other town offices, which includes the office of commissioner of common schools, (*id.* 340, § 3,) may be supplied by the justices of the peace of the town.   (*Id.* 348, § 36 ; *id.* 347, § 31.)

But although removal from a town vacates a town office, it does not follow that the same rule holds as to the office of school commissioner for the several wards of the city of New-York. That question depends upon the provisions of the statutes applicable to this particular subject.

In 1842, an act was passed " to extend to the city and county of New-York, the provisions of the general act in relation to common schools."   (*Laws* 1842, *p.* 184.)   This act, although very imperfect in its details, lies at the foundation of the system of common schools since established in that city.   It provides for the election in each ward of two commissioners of schools, to be chosen annually, " by the persons qualified to vote for charter officers in the said wards," and which commissioners, in addition to the ordinary duties of their office, are to constitute the board of education for the city of New-York.   (§ 1.  *See also Laws of* 1843, *p.* 290, § 1, *and Laws* 1844, *p.* 490, §§ 1, 2.) These sections show who were to be electors of the ward commissioners ; but neither of the acts referred to declares in terms what qualifications are required to render a person eligible to the office of commissioner.   The act of 1842, however, does provide, and this provision has not been repealed or modified, that " for all the purposes of this act, each of the several wards into which the said city and county of New-York now is or may be hereafter divided, shall be considered as a separate

town ;" and certain parts of the revised statutes which relate to common schools, (1 *R. S.* 470 *to* 488, *art.* 3, 4, 5, 6,) were declared to be applicable to the several wards of said city and county, " so far as the same are consistent with this act." (§§ 3, 4.)

*For all the purposes of said act* each ward was therefore to be considered as a town.   One of these purposes was the choice of commissioners of common schools ; and in a town no one is eligible to that office but an elector and resident of the town. This principle is made applicable to the office of ward commissioner, so that no one can be chosen to that office who is not at the time a resident of the ward.   A change of residence, we have seen, vacates the office of town commissioner, and as the wards, for all the purposes of said act, are to be considered as towns, the office of ward commissioner is vacated by a removal from the ward.   But the general statute on this subject applies to such a case.   It declares that every local office shall become vacant by the incumbent ceasing to be an inhabitant " of the district, county, town or city for which" he was chosen.   (1 *R. S.* 122, § 34.)   It is true this section does not use the word *ward,* to designate a locality for which the officer may have been chosen, but it has the word *town,* which for this purpose may well be taken to indicate a ward of the city of New-York. This section in words, applies to " every office," and it is manifest that it was designed to be without a single exception in the state.

The chief powers of these school commissioners are to be exercised in their respective wards, although very important duties devolve upon them as members of the board of education.   In general their proper duties as commissioners are very similar to those of town commissioners ; yet they are variously modified by the several acts before referred to.   These duties require an intimate knowledge of the wants of the ward, and a devotion to its interests which is hardly to be looked for from one who is not a resident within its limits.   I will not say that the reasons for requiring such residence are as cogent when applied to a ward of the city of New-York, as to a country town ; yet the difference, if any exists, is too slight to rest a solid distinction

upon. It does not appear to what place the relator has removed. He may, and I think it was said on the argument, he did reside in another ward of the city. But if that does not vacate his office, I do not see that moving to another county, or even leaving the state, would produce that result.

The act of 1844 (*p.* 503, § 48,) provides for filling vacancies in the office of ward commissioners of schools, when occasioned by death, resignation, neglect or refusal to qualify or give the prescribed security. Upon this it is argued that no vacancy can occur in this office but such as is referred to in this section ; and as removal is not named in the section as creating a vacancy, it cannot have that effect. I by no means think this conclusion must follow from that enactment. The section seems not to have been drawn with a view to declare what particular causes should work a vacancy in the office. Nor was that necessary, for these were to be found in the revised statutes already referred to. (1 *R. S.* 122, § 34.) But this section of the act of 1844 was intended to provide for filling the office when vacant, and such vacancies as most frequently occur are certainly provided for by the enactment as it is, although, through inadvertence it may be presumed, and without looking at the general statute applicable to this and all other offices, partial provision only was made for filling vacancies which may occur. Instances of similar legislation are too frequent to excite surprise, and they cannot, although incongruous and awkward, be allowed to set aside the plain words of a general statute applicable to the particular case in hand.

I think the relator vacated his office by removing from the ward.

Judgment for defendants.